**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KAYLEN SOUTHARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-19-307-STE** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 23-33). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 27, 2016, her alleged onset date. (TR. 25). At step two, the ALJ determined that Ms. Southard had the following severe impairments: obesity; migraine headaches; asthma; depression; and anxiety. (TR. 25). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26).

At step four, the ALJ concluded that Ms. Southard could not perform her past relevant work, but retained the residual functional capacity (RFC) to:

> [P]erform a reduced range of light work as defined in 20 CFR 404.1567(b). Specifically, she cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. In addition, she can have frequent exposure to extreme temperatures, and environmental respiratory irritants and humidity. She is limited to simple, repetitive, routine tasks. Lastly, she can have no strict production requirements; and can have frequent contact with co-workers, supervisors and the public.

(TR. 28, 31).

At step five, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 65-66). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 66). The ALJ adopted the VE's testimony and concluded that Ms. Southard was not disabled at step five. (TR. 32-33).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**IV. ISSUES PRESENTED**

On appeal, Ms. Southard alleges the ALJ: (1) failed to include limitations related to her migraine headaches in the RFC and (2) erred at step five. (ECF No. 13:3-12).

**V. ERRORS IN THE CONSIDERATION OF MIGRAINE HEADACHES**

At step two, the ALJ concluded that Ms. Southard suffered from severe migraine headaches. (TR. 25). According to Plaintiff, the ALJ failed to include related limitations in the RFC. (ECF No. 13:3-12). Ms. Southard is correct.

**A. Evidence of Plaintiff's Migraines**

Ms. Southard alleges a history of chronic migraine headaches. Indeed, such evidence exists to support her allegations. On July 22, 2014, treating physician Kent Studebaker stated that Plaintiff was "[p]ositive for speech difficulty" following the onset of a headache. (TR. 341). On August 3, 2015, Plaintiff complained to Dr. Studebaker of suffering from a complex migraine with light sensitivity. (TR. 318). Dr. Studebaker diagnosed Ms. Southard with an "atypical migraine." (TR. 319). On August 15, 2015, Plaintiff complained to neurologist Kevin Wood of "difficulty writing" and photophobia while suffering migraines, and Dr. Wood affirmed that the symptoms were migraine related. (TR. 365, 366).

On April 27, 2016, Dr. Eddie Scott performed a consultative mental status examination on Plaintiff. (TR. 374-378). Dr. Scott noted that Plaintiff complained of two types of headaches: (1) complex migraine headaches which caused her difficulty writing and speaking, and (2) cluster headaches which caused severe pain, in ability to focus, and sensitivity to light. (TR. 375). At that time, Plaintiff complained that she suffered

cluster headaches several times per week and complex migraines "every week or two." (TR. 375). Dr. Scott concluded that Plaintiff could "understand, remember and carry out simple and complex instructions in a work-related environment." (TR. 378). One week later, Plaintiff reported to Dr. Studebaker that her headaches were occurring daily. (TR. 437). Finally, on May 7, 2016, Dr. Raymond Azadgoli performed a consultative examination on Ms. Southard, and assessed her with complex migraines headaches with "aura symptoms" and "disrupted speech." (TR. 385).

At the administrative hearing on December 5, 2017, Ms. Southard testified that that she was suffering from "almost daily" migraines which caused her sensitivity to light and loss of focus. (TR. 53-54). Plaintiff testified she believed a change in her migraine medication was warranted because her headache frequency had increased significantly. (TR. 54-55). At that time, Ms. Southard testified that her only treatment was to go to her room and "shut the door and shut the world out." (TR. 55).

## B.     Error in the ALJ's Evaluation of Plaintiff's Migraines

In the decision, the ALJ twice noted Plaintiff's testimony regarding her headaches. First, the ALJ stated that Plaintiff testified that she "experienced daily migraines, and had difficulty with memory functioning and maintaining concentration." (TR. 29). Second, the ALJ stated: "at the hearing, the claimant testified that she continued to have daily migraines, lasting the entire evening and causing memory functioning difficulties." (TR. 29). When describing Plaintiff's headaches, the ALJ noted that Plaintiff had consistently complained of the headaches, and had described them as "a sharp stabbing pain associated with photophobia and phonophobia, accompanied with nausea and occasional

vomiting." (TR. 29). To account for the migraines, the ALJ stated that she "limited the claimant to light exertional work as well as simple work in a low stress work setting." (TR. 29).

Ms. Southard alleges the RFC failed to account for symptoms associated with her migraines involving pain, photophobia, disrupted speech, and decreased concentration/focus. (ECF No. 13:8-12).[1] The Court agrees, but only regarding to limitations involving photophobia and disrupted speech.

Regarding the pain, Plaintiff alleges that "the ALJ failed to conduct a pain analysis[.]" (ECF No. 13:9). In support, Ms. Southard cites the two-step framework required for the ALJ to consider a claimant's symptoms, including pain, and determine the extent to which the symptoms are consistent with the evidence. (ECF No. 13:9-10). However, the Court finds this argument undeveloped, as Ms. Southard does not explain how the ALJ had failed to comply with the regulatory framework. *See* ECF No. 13:10; *Murrell v. Shalala,* 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review).

Next, as the Commissioner points out,[2] the RFC for "simple, repetitive, routine tasks" accommodated any decrease in Plaintiff's concentration. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("the ALJ accounted for [the plaintiff's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work … [which] generally requires … simple work-related decisions.").

---

[1] Ms. Southard concedes that the RFC would account for her difficulty in writing and transposing numbers associated with her migraines. *See* ECF No. 13:9.

[2] (ECF No. 18:8-9).

But a problem arises with respect to Plaintiff's migraine symptoms involving photophobia and disturbed speech. As alleged by Ms. Southard, the RFC did not account for these limitations and the ALJ did not explain why. The Commissioner presents six arguments in support of his decision, but none of them have merit.

First, Defendant cites Plaintiff's examination with Dr. Scott who "observed that [Plaintiff's] speech was logical, goal-oriented, and fully intelligible; and her thought processes and memory were intact; but she was somewhat depressed with a flat affect. (ECF No. 18:7, citing TR. 375-378). According to the Commissioner, "[t]esting revealed that Plaintiff's migraines were not causing significant deficits at that time; indeed Dr. Scott opined that she could carry out understand, and remember simple and complex instructions in a work environment." (ECF No. 18:7). Defendant correctly asserts that Dr. Scott's opinion regarding Ms. Southard's ability to "carry out understand, and remember simple and complex instructions in a work environment" correlates with the RFC. *Compare* TR. 378 (Dr. Scott's opinion) *with* TR. 28 (RFC). But the Commissioner's comments that "[t]esting revealed that Plaintiff's migraines were not causing significant deficits at that time" is pure speculation—Dr. Scott never rendered an opinion; rather he only reported the results of various tests. *See* TR. 373, 377, 378. What was omitted, however, was Dr. Scott's acknowledgement of Plaintiff's complaints that her migraines caused disturbed speech and photosensitivity. Dr. Scott offered no opinion either way regarding these limitations. Thus, Defendant's reliance on Dr. Scott's opinion is not persuasive. *See* TR. 31.

Second, Defendant cites to "normal physical and mental examinations" as evidence that Plaintiff's migraines would not cause any work-related limitations. (ECF No. 18:7). Defendant's reliance on the records he cites is misplaced. The February 23, 2017 record concerned an ER visit where Plaintiff's chief complaint was of a cough. (TR. 391-395). The February 7, 2017 record concerned Plaintiff's treatment for flu-like symptoms. (TR. 488). The March 9, 2017 record concerned a follow-up check with Dr. Studebaker for a recent hospital visit for pneumonia. (TR. 507). And finally, the May 3, 2016 and June 3, 2016 records noted that Plaintiff suffered "migraine with aura." (TR. 382, 439). Only the last two records provide specific evidence relevant to Plaintiff's migraines and contrary to Defendant's assertion otherwise, the findings did not support the Commissioner's decision to omit any discussion of Plaintiff's photosensitivity. *See Hua v. Astrue*, No. 07-CV-02249-WYD, 2009 WL 524991, at *6 (D. Colo. Mar. 2, 2009) (noting that an ALJ's reliance on "normal findings on physical examinations" was an insufficient basis on which to discount migraine symptoms involving photophobia which are considered objective evidence of the condition).

Third, Defendant states: "Although Plaintiff complained of migraines, she did not report that they were so frequent and debilitating that they would keep her from working, that they required her to seek emergency care, or that medications did not help alleviate them." (ECF No. 18:7). The Commissioner is mistaken. As discussed, Plaintiff testified that she believed her medications were not working because her migraines had increased to almost daily frequency. *See supra*. And the Commissioner's reliance on an absence of testimony regarding migraines not keeping Plaintiff from working is not persuasive.

Plaintiff was not specifically asked a question on this matter, but her attorney made it clear that Ms. Southard was alleging disability, in part, based on her headaches. *See* TR. 43.

Fourth, the Commissioner argues: "Plaintiff does not clearly explain what alleged limitation would keep her from performing light unskilled work." (ECF No. 18:8). The Court disagrees, as Ms. Southard has specifically alleged limitations involving disturbed speech and photophobia. *See Thurston v. Colvin*, No. 15-1378-SAC, 2016 WL 6905901, at *5 (D. Kan. Nov. 22, 2016) (noting that physician's opinions regarding a plaintiff's light sensitivity were "sufficiently specific regarding plaintiff's limitations.").

Fifth, Mr. Saul discounts Plaintiff's reliance on Dr. Azagdoli's comment regarding Plaintiff's "disrupted speech" as self-reported and states that it fails to provide proper evidence upon which to base a finding of disability. (TR. 18:9, citing 20 C.F.R. § 404.1529). But even if Dr. Azagdoli's opinion would not support Plaintiff's allegations of "disrupted speech," the limitation is supported by a finding from Dr. Studebaker who stated that Plaintiff was "[p]ositive for speech difficulty" following the onset of a headache. (TR. 341).

Sixth, Defendant stated that "contrary to Plaintiff's contention, the ALJ properly considered Plaintiff's allegations of disrupted speech, pain, and photophobia, and concluded that Plaintiff's statements were inconsistent and unsupported." (ECF No. 18:9) (internal citation omitted). However, contrary to this contention, the ALJ found only that the Plaintiff's allegations of daily migraines were unsupported based on "normal physician examinations" and "negative" brain MRIs. But neither the Defendant's argument, nor the

ALJ's discounting of "daily migraines" addresses Plaintiff's complaints of photophobia and disturbed speech.

In sum, the record contains evidence regarding Plaintiff's migraine-related symptoms involving disturbed speech and photophobia, which the ALJ failed to discuss or properly discount. The RFC for simple, repetitive, and routine tasks accommodates a portion of Ms. Southard's migraine-related symptoms, but it fails to account for the speech issues and photophobia. The ALJ never acknowledged Plaintiff's speech issues which were seemingly caused by the onset of a headache, and the one time the ALJ acknowledged Plaintiff's complaint of photophobia to a physician, she failed to explain her treatment of the evidence. *See* TR. 29. The ALJ omitted any mention of this particular symptom as described by Plaintiff at the hearing, which, according to Ms. Southard, was occurring "almost daily" and required her to go to her room and "shut the door and shut the world out." (TR. 55). This omission constitutes reversible error. *Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) ("The ALJ erred by failing to discuss the significant evidence of [the plaintiff's] headaches and how they might impact his functional abilities …. We therefore remand for the ALJ to consider the evidence of [the plaintiff's] headaches[.]").

## VI.   STEP FIVE

Finally, Plaintiff contends error at step five based on the allegedly deficient RFC and resulting hypothetical to the VE. (ECF No. 13:11-12). But the Court will not consider the alleged step five error in light of the remand for consideration of the evidence. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the

remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on December 27, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE